## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**KENNETH DWAYNE HARTH, SR.**                                          **PLAINTIFF**

**v.**                                        **No. 4:20CV47-RP**

**MISSISSIPPI DEPARTMENT**
**OF CORRECTIONS, ET AL.**                                        **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Kenneth Dwayne Harth, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that defendant Captain King failed to protect him from attack by other inmates by failing to transfer him after the attack. Captain King has moved for dismissal, arguing that Mr. Harth's allegations fail to state a constitutional claim – and that Mr. Harth failed to exhaust administrative remedies as to this claim before filing the instant suit. For the reasons set forth below, defendant King's motion will be granted, and he will be dismissed with prejudice from this suit.

### Failure to Exhaust Administrative Remedies

The documents attached to the complaint reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large

number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must … exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve

factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. Prisoners must face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections created an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL

616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra*. If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id*. The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id*. Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

The Inmate Handbook states that a grievance "should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not required to present

specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

The grievances attached to Mr. Harth's complaint show that he never exhausted his administrative remedies as to any claim against Captain King, *see generally* Doc. No. 1, as he is not referenced in any of the grievances, nor is the incident of the alleged attack by seven inmates from which Harth's claims against King arise. *Id.* As Mr. Harth did not exhaust his administrative remedies regarding this allegation, his claims against Captain King must be dismissed. *See, e.g.*, *Pinkton*, 2019 WL 1089087 at *3.

### Failure to State a Constitutional Claim

Mr. Harth alleges that, after he was attacked by "7 or 8 gang members on S-3 zone," he asked Captain King for a transfer. Ex. B at p.31 (emphasis added). Captain King stated that he first had to speak with Captain Hall. *Id.* Mr. Harth was then moved to the S-4 zone. *Id.* "[R]esponding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative actions fulfills an official's protective duties under the Eighth Amendment." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) (quoting *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004)). Captain King responded to Harth's complaint, and he was promptly moved to a new zone. Mr. Harth has not alleged that he was attacked again after asking Captain King for a transfer. *See generally id.* Therefore, he has not alleged that he suffered any injury that might give rise to a failure-

to-protect claim. *Moorman v. Jowers*, 313 F. App'x 733, 735 (5th Cir. 2009). As such, he has not shown that Captain King acted with deliberate indifference, and this allegation that Captain King failed to protect him must be dismissed for failure to state a claim upon which relief could be granted.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment will be granted, and the plaintiff's claims against Captain King will be dismissed with prejudice.[1] A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 18th day of March, 2022.

/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE

---

[1] In the alternative, the plaintiff's claims against Captain King are dismissed for failure to exhaust administrative remedies. *See Gonzalez v. Prasifka*, 54 F. App'x 406 (5th Cir. 2002) (District Court "did not err in dismissing [the plaintiff's § 1983] action [on the merits and] on the alternative ground that he failed to exhaust his administrative remedies.")